AJAX PAVING INDUSTRIES, INC v VANOPDENBOSCH
CONSTRUCTION CO

Docket No. 288452. Submitted March 2, 2010, at Detroit. Decided July 1,
2010. Approved for publication August 31, 2010, at 9:10 a.m.

Ajax Paving Industries, Inc., a contractor hired with regard to
roadway resurfacing operations in the city of Detroit, brought an
action in the Wayne Circuit Court against two of Ajax's subcon-
tractors, Vanopdenbosch Construction Co. and Tenmile Creek
Excavating, LLC, seeking indemnification under the subcontracts
for Ajax's costs resulting from the settlement of two underlying
lawsuits that sought to impose liability on Ajax for the work
performed pursuant to the subcontracts. The court, Isidore B.
Torres, J., granted summary disposition in favor of Ajax. Ajax then
moved for the entry of a judgment awarding it the costs of settling
the underlying lawsuits and the reasonable attorney fees and costs
associated with defending those actions. The court entered an
order for partial summary disposition that provided that each
defendant would be liable for one-half of the total amount Ajax
paid in the underlying lawsuits. The court also ordered an eviden-
tiary hearing to address the issue of costs and attorney fees.
Following that hearing, the court ruled that Ajax could recover
from Vanopdenbosch only those attorney fees and costs incurred
after the date Ajax provided Vanopdenbosch notice of the under-
lying actions. The court, further noting that Tenmile Creek had
already paid Ajax a higher amount for fees and costs and had been
dismissed from the action, determined that Ajax had been ad-
equately compensated and denied the motion for the entry of a
judgment regarding costs and fees. Vanopdenbosch appealed the
order granting summary disposition in favor of Ajax. Ajax cross-
appealed the order denying the motion for the entry of a judgment
regarding costs and fees.

The Court of Appeals *held*:

1. The indemnity provision contained in Vanopdenbosch's sub-
contract was broad and provided that Vanopdenbosch would
indemnify Ajax not only for actions directly or indirectly caused,
occasioned, or contributed to by an act, omission, or fault of
Vanopdenbosch, but also for those actions that were "claimed" to

be directly or indirectly caused, occasioned, or contributed to by an act, omission, or fault of Vanopdenbosch. There was nothing in the provision requiring the party initiating an action or obtaining damages to claim that an incident was directly or indirectly caused or contributed to by Vanopdenbosch. The language provided only that a claim must be made and did not specify who must make the claim or that the claim even need be proved. The trial court did not err by determining under the facts of this case that the claims presented in the underlying actions were covered by the parties' subcontract. With regard to the claim of trespass in the second underlying action, that cause of action was properly construed as pertaining to Vanopdenbosch, and, therefore, the indemnity provision in the subcontracts applied to the claim. Summary disposition in favor of Ajax with regard to the indemnity provision was thus appropriate.

2. The indemnity provision in the subcontract did not require that Vanopdenbosch be put on notice of an underlying lawsuit or that there be a tender of defense for the provision to apply. Ajax was entitled to recover the entirety of the fees and costs from the underlying lawsuits because the subcontract contained no notice or tender-of-defense requirement and expressly provided for the recovery of all fees and costs associated with defending the underlying actions. The lack of notification of the underlying actions did not preclude a finding that Vanopdenbosch was liable under the indemnification provision for the monies paid by Ajax to those involved in the underlying lawsuits and the attorney fees and costs associated with defending those lawsuits. The case must be remanded for a determination regarding Ajax's claimed attorney fees and costs and for the entry of a judgment consistent with that determination. The case must be affirmed in all other respects.

Affirmed and remanded.

*Plunkett Cooney* (by *Ernest R. Bazzana*) for Ajax Paving Industries, Inc.

*Berry, Johnston, Sztykiel & Hunt, P.C.* (by *Timothy J. Clifford*), for Vanopdenbosch Construction Co.

Before: SERVITTO, P.J., and BANDSTRA and FORT HOOD, JJ.

SERVITTO, P.J. Defendant Vanopdenbosch Construction Co. appeals as of right the trial court's order granting

summary disposition in plaintiff's favor. Plaintiff, Ajax Paving Industries, Inc., cross-appeals the trial court's order denying plaintiff's motion for the entry of a judgment regarding costs and fees. Because the trial court did not err by granting summary disposition in plaintiff's favor on the basis of the parties' indemnity contract, but erred in its determination that costs and fees recoverable pursuant to the indemnity contract were limited to those incurred after the date Vanopdenbosch Construction Co. was notified of the underlying lawsuits, we remand to the trial court for a determination regarding the reasonableness of plaintiff's claimed attorney fees and costs and entry of a judgment consistent with those findings, and affirm in all other respects.

Plaintiff filed a complaint against defendants, Tenmile Creek Excavating, LLC, and Vanopdenbosch Construction Co., on May 21, 2007. According to plaintiff, the Michigan Department of Transportation (MDOT) hired plaintiff as a contractor with regard to roadway resurfacing in the city of Detroit, and plaintiff entered into separate subcontracts with both Tenmile Creek and Vanopdenbosch to perform specific work on the resurfacing project. The subcontracts each contained an indemnity clause whereby Tenmile Creek and Vanopdenbosch agreed to indemnify plaintiff and to hold it harmless for any actions associated with or arising out of their respective work. The subcontracts also required Tenmile Creek and Vanopdenbosch to obtain, at their expense, workers' compensation insurance, general-liability insurance, and automobile insurance, naming plaintiff as an additional insured party on the policies.

Plaintiff alleged that it was named as a defendant in a lawsuit that sought to impose liability on plaintiff relating to the work performed by Tenmile Creek and Vanopdenbosch pursuant to the parties' subcontracts.

Specifically, a woman was allegedly injured when the car in which she was a passenger struck a protruding manhole cover located on the street where defendants had performed resurfacing work pursuant to their contracts with plaintiff. The injured passenger brought suit against plaintiff and Wayne County, and the arbitration of that matter ultimately resulted in an award in the injured passenger's favor of $40,000. Plaintiff was thereafter named as a defendant in a lawsuit initiated by Wayne County, which sought indemnity from plaintiff concerning the prior lawsuit and, additionally, set forth a claim for trespass. Wayne County settled its lawsuit against plaintiff for a payment of $5,000. According to plaintiff, both defendants in the instant lawsuit had refused to defend or hold plaintiff harmless from the claims of the injured passenger and Wayne County, thereby beaching the parties' subcontracts. Plaintiff also alleged that both defendants breached the parties' subcontracts by failing to secure the required insurance coverage.

Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10), asserting that the lawsuits at issue were expressly covered by the parties' contracts and that there was no material question of fact that defendants breached the parties' agreements by failing to indemnify plaintiff in the lawsuits and to obtain primary, rather than excess, general-liability-insurance coverage. The trial court granted plaintiff's motion for summary disposition.

Thereafter, plaintiff moved for the entry of a judgment, contending that because its motion for summary disposition was granted, it was entitled to reimbursement of the costs of settling the underlying two lawsuits, as well as its reasonable attorney fees and costs associated with defending the two lawsuits. The trial

court entered an order for partial summary disposition that provided that each defendant would be liable for one-half of the total amount plaintiff paid in the underlying lawsuits ($45,000) and ordered an evidentiary hearing to address the issue of costs and attorney fees.[1]

The trial court ultimately ruled that plaintiff was limited in its recovery from Vanopdenbosch to only those attorney fees and costs incurred after the date plaintiff provided Vanopdenbosch with notice of the underlying proceedings—April 4, 2007. The trial court determined that only $1,417.47 in attorney fees were incurred after that date, but also noted that plaintiff had already received $10,500 in fees and costs from Tenmile Creek. As a result, the trial court ruled that plaintiff had been more than adequately compensated for attorney fees and costs and denied plaintiff's motion. This appeal followed.

A motion for summary disposition under MCR 2.116(C)(10) is properly granted if no factual dispute exists, thus entitling the moving party to judgment as a matter of law. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 31; 651 NW2d 188 (2002). In deciding a motion brought under subrule (C)(10), a court considers all the evidence, affidavits, pleadings, and admissions in the light most favorable to the nonmoving party. *Id.* at 30-31. We also review de novo issues of contract interpretation. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

On appeal, defendant[2] first contends that the trial court erred by ruling that the injured passenger's

---

[1] The trial court entered a stipulated order for dismissal of Tenmile Creek before the evidentiary hearing. Tenmile Creek therefore did not participate in the hearing.

[2] Because Tenmile Creek is not a party to this appeal, "defendant" hereafter refers to Vanopdenbosch only.

claims were covered by the parties' subcontract when there was no indication that the work performed by defendant caused the manhole cover to protrude above the milled road surface. We disagree.

A contract must be interpreted according to its plain and ordinary meaning. *St Paul Fire & Marine Ins Co v Ingall*, 228 Mich App 101, 107; 577 NW2d 188 (1998). When the language of the contract is clear and unambiguous, interpretation is limited to the actual words used, and an unambiguous contract must be enforced according to its terms. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). This Court applies to indemnity contracts the same contract construction principles that govern any other type of contract. *Zahn v Kroger Co of Mich*, 483 Mich 34, 40; 764 NW2d 207 (2009). On appeal, this Court interprets an indemnification provision in a manner that will serve to provide a reasonable meaning to all the terms contained therein. *MSI Constr Managers, Inc v Corvo Iron Works, Inc*, 208 Mich App 340, 343; 527 NW2d 79 (1995). In essence, an indemnification provision is to be construed to effectuate the intentions of the parties to the contract, which is determined through review of the contract language, the situation of the parties, and the circumstances involved in the initiation of the contract. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 172; 530 NW2d 772 (1995).

Plaintiff and defendant's contract contained the following indemnity provision:

> Subcontractor agrees to indemnify Ajax and MDOT and to hold each of them forever harmless from and against all suits, actions, legal or administrative proceedings, claims, demands, damages, judgments, liabilities, interest, attorney's fees, costs and expenses of whatsoever kind or nature whether arising before or after completion of Subcontractor's work and in any manner directly or indirectly caused,

> occasioned or contributed to, or claimed to be caused, occasioned or contributed to, by any act, omission[,] fault or breach of Subcontractor or of anyone acting under its direction, control, or on its behalf in connection with or incidental to the work of Subcontractor and regardless whether directly or indirectly caused, occasioned or contributed to, or claimed to be caused, occasioned or contributed to in part by a party indemnified hereunder or by anyone acting under their direction, control, or on their behalf.

This language is broad and provides for indemnity not only for actions directly or indirectly "caused, occasioned or contributed to" by an act, omission, or fault of defendant, but also those actions that are *"claimed"* to be "directly or indirectly caused, occasioned or contributed to" by an act, omission, or fault of defendant. (Emphasis added.)

Apparently, defendant is of the belief that in the underlying lawsuit there must have been an allegation by plaintiff that defendant caused or contributed to the accident in order for the indemnity provision to be applicable. However, there is nothing in the provision requiring the party initiating an action or obtaining damages to claim that an incident was directly or indirectly caused or contributed to by defendant. Instead, the language provides only that a claim must be made—without specifying who must make the claim or, more importantly, that the claim even need be proved.

As admitted by defendant, the scope of its work under the subcontract included adjusting the manhole cover. Though it is unclear what "adjustments" were made, the adjustments were alleged to have been made a short time before the accident. The injured party alleged in her arbitration summary that an "Ajax paving subcontractor" adjusted the manhole cover and that the cover protruded above the roadway, causing the

accident that led to her injuries. Because of the facts that defendant made some adjustments and that the accident in the underlying lawsuit was caused by the protruding manhole cover, it could be asserted that the lawsuit was "in any manner directly or indirectly caused, occasioned or contributed to, or claimed to be caused, occasioned or contributed to, by any act, omission[,] fault or breach of [Vanopdenbosch]." Thus, the expansive and unambiguous indemnity provision was triggered, and the trial court did not err by determining that the injured passenger's claim was covered by the parties' subcontract.

Defendant next contends that the trial court erred by ruling that the claims of Wayne County fell within the parties' subcontract when there was no evidence that these claims were caused by any action or omission of defendant in connection with its structural work. Again, we disagree.

Wayne County's complaint against plaintiff contained an allegation that "Wayne County is entitled to common-law indemnity from Ajax Paving where the evidence is undisputed that Ajax Paving and/or its subcontractors caused the condition that [the injured passenger] claims caused her injuries, and Wayne County had no involvement in creating the condition." Because Wayne County's complaint specifically alleged that plaintiff or its subcontractors (including Vanopdenbosch) caused the road condition leading to the asserted injuries, the indemnity clause in plaintiff and defendant's agreement is applicable.

As defendant points out, Wayne County's complaint against plaintiff included a claim of trespass. This does not, however, render the indemnity provision at issue inapplicable. As previously indicated, Wayne County and plaintiff settled their dispute by agreeing to a

$5,000 payment from plaintiff. This settled all of Wayne County's and plaintiff's claims with no indication whether the payment was intended to compensate Wayne County for only the trespass claim, only the indemnity claim, or both equally. Nevertheless, Wayne County's complaint for trespass specifically encompassed the actions of plaintiff or its subcontractors in performing the roadwork. Wayne County alleged that plaintiff proceeded with roadwork without its consent, but also alleged that plaintiff removed the asphalt around the manhole cover and that plaintiff admitted that it "or its subcontractors" were at fault in creating the condition causing the accident. Because defendant admittedly entered onto the roadway and performed work there, and because the allegations of trespass included a claim that plaintiff or its subcontractors created a condition that caused the accident, the trespass cause of action could be construed as pertaining to defendant, and the indemnity provision would still apply.

Defendant's final argument on appeal is that the trial court erred in its determination that defendant breached its contractual duty to obtain insurance when it did, in fact, obtain insurance coverage in favor of plaintiff on an excess basis and when the contract did not specify that insurance coverage was to be on a primary basis. Because we have determined that summary disposition was appropriate in plaintiff's favor on the basis of the indemnity provision, we need not address this insurance issue. As indicated by plaintiff, the insurance issue "provides an alternate basis upon which to premise the grant of partial summary disposition in favor of Ajax with respect to the $22,500 amount (after setoff) that it paid to settle the underlying actions." An appropriate judgment having been entered requiring defendant to pay one-half of the amount plaintiff paid to the injured passenger, even if we were to reverse the determination of the trial court on the

insurance issue, plaintiff would not be entitled to any relief additional to that already received pursuant to the indemnity provision.

Plaintiff's sole issue on cross-appeal concerns the trial court's determination that defendant's obligation to reimburse plaintiff for its fees and costs incurred in defending the underlying actions was limited to those incurred after the date plaintiff notified defendant of the actions. According to plaintiff, the parties' contract expressly entitled plaintiff to recover all costs and attorney fees, without limitation, and in holding otherwise, the trial court did not read and apply the contract as specifically written. Defendant contends, however, that defendant was not made aware of the lawsuits until 18 months after Wayne County initiated its lawsuit. According to defendant, if it breached the parties' indemnity contract, then the breach could only have occurred after notice was given of the underlying lawsuits and plaintiff's damages for the breach must be, as the trial court correctly determined, limited to those that arose naturally from the breach (i.e., those that were incurred after the breach).

As previously indicated, the parties' contract required defendant to

indemnify Ajax and MDOT and to hold each of them forever harmless from and against all suits, actions, legal or administrative proceedings, claims, demands, damages, judgments, liabilities, interest, attorney's fees, costs and expenses of whatsoever kind or nature whether arising before or after completion of Subcontractor's work and in any manner directly or indirectly caused, occasioned or contributed to, or claimed to be caused, occasioned or contributed to, by any act, omission[,] fault or breach of Subcontractor . . . .

Plaintiff asserted that defendant breached this contractual provision by failing to indemnify it concerning the underlying lawsuits. It is undisputed that the action by

the injured passenger was initiated on October 12, 2005. It is also undisputed that neither defendant nor its insurer was advised of that lawsuit or the lawsuit by Wayne County until April 4, 2007. Notably, however, there is no contractual provision in this matter requiring that defendant be put on notice of an underlying lawsuit or that there be a tender of defense for the indemnification provision to apply. And, as previously stated, a contract must be interpreted according to its plain and ordinary meaning. When the contractual language is clear and unambiguous, interpretation is limited to the actual words used, and the contract is enforced according to its unambiguous terms. *St Paul*, 228 Mich App at 107; *Burkhardt*, 260 Mich App at 656. Because the contract itself contains no notice or tender-of-defense requirement and expressly provides for the recovery of all fees and costs associated with defending the underlying litigation, without limitation, plaintiff is entitled to recover the entirety of those fees and costs.

In support of its position otherwise, defendant asserts that the duties to defend and to indemnify stated in the subcontract are coextensive. However, the parties' contract contains no "duty to defend" provision. In addition, the two concepts are not interdependent; they relate to distinctly different matters. "Defend" means to "deny, contest, or oppose (an allegation or claim)." Black's Law Dictionary (7th ed). "Indemnity," however, is defined as a "duty to make good any loss, damage, or liability incurred by another." *Id*. Because a person cannot oppose an allegation or claim unless he or she is aware of the same, it could be reasonably argued that one who desires to trigger a contractual duty to defend must necessarily tender notice of the litigation to the defender. The same does not hold true for indemnification, however, because indemnity contemplates reimbursement for injuries/losses that have already been incurred.

Defendant's reliance on certain authority suggesting that fees and costs subject to reimbursement are limited to those incurred only after a tender of a defense is misplaced because the cited cases addressed contracts that expressly established both a duty to indemnify *and* a duty to defend. See, e.g., *Hayes v Gen Motors Corp*, 106 Mich App 188; 308 NW2d 452 (1981); *Grand Trunk W R Co v Auto Warehousing Co*, 262 Mich App 345; 686 NW2d 756 (2004). Plaintiff's reliance on *Dep't of Transp v Christensen*, 229 Mich App 417; 581 NW2d 807 (1998), is also misplaced because that case is factually distinguishable from the matter at hand. Most notably, in *Christensen*, a panel of this Court found the existence of an implied contract for indemnification, whereas, in the instant matter there is a specific, unambiguous contract for indemnification that must be enforced as written. Additionally, *Christensen* did not address costs and fees recoverable under an indemnification contract. Instead, it addressed the indemnification of the amount MDOT paid as a result of a consent judgment in the underlying action. Finally, while *Christensen* determined that there was no requirement that a defense be tendered to the plaintiff because of a direct conflict of legal interests between the parties, it did not rule or announce that a tender of defense is required in all indemnification matters in which a conflict of interest is *not* present. The lack of notification in this matter did not preclude a finding that defendant was liable under the indemnification provision for the monies paid by plaintiff to those involved in the underlying lawsuits, and it does not preclude a finding that defendant is liable for the attorney fees and costs associated with defending the underlying actions.

Having determined that plaintiff is not limited in its recovery of fees and costs to only those incurred after it notified defendant of the underlying actions, we turn to

the amount of fees and costs that should be awarded. At a hearing on plaintiff's motion for the entry of a judgment concerning costs and attorney fees, plaintiff submitted that the total costs and fees incurred in the defense of the underlying actions were $25,446. Plaintiff also acknowledged that it had already received $10,500 of those fees and costs from Tenmile Creek and later indicated that because of some erroneous calculations, and some agreements with defendant, it was actually only seeking to recover $11,627 from defendant as reimbursement for the remaining fees and costs. While defendant challenged the reasonableness of some of plaintiff's fees, the trial court made no ruling on these challenges. Remand is therefore necessary for the trial court to consider and rule on any challenges to the disputed fees and costs.

Remanded for a determination of plaintiff's claimed attorney fees and costs and for entry of a judgment consistent with the trial court's determination. This matter is affirmed in all other respects. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.